Mazzei v. Money Store

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2015

(Argued: May 19, 2016      Decided: July 15, 2016)

Docket No. 15-2054

- - - - - - - - - - - - - - - - - - - -x

JOSEPH MAZZEI, on behalf of himself
and all others similarly situated,

Plaintiff-Appellant,

- v.-

THE MONEY STORE, TMS MORTGAGE
INC., HOMEQ SERVICING CORP.,

Defendants-Appellees.[*]

- - - - - - - - - - - - - - - - - - - -x

Before:        KEARSE, WINTER, and JACOBS, Circuit
               Judges.

Plaintiff-appellant Joseph Mazzei initiated a class

action against The Money Store et al., alleging, inter alia,

overcharge of late fees on mortgages, and prevailed in a

jury trial.  The United States District Court for the

---

[*] The Clerk of Court is directed to amend the official
caption in this case to conform to the listing of the
parties above.

Southern District of New York (Koeltl, J.) (i) granted defendants-appellees' post-verdict motion to decertify (under Federal Rule of Civil Procedure 23(c)(1)(C)) a class that was previously certified pursuant to Rule 23(a) and (b)(3); and (ii) entered judgment in favor only of Mazzei, the putative class representative.

We hold that a district court has power, consistent with the Seventh Amendment and Rule 23, to decertify a class after a jury verdict and before the entry of final judgment. We also hold that, in considering such decertification (or modification), the district court must defer to any factual findings the jury necessarily made unless those findings were "seriously erroneous," a "miscarriage of justice," or "egregious." Applying these principles, we conclude that the district court did not abuse discretion in determining that Rule 23's requirements were not met and in decertifying the class.

An accompanying summary order affirms the denial of Mazzei's motion for a new trial as to a second claim.

Affirmed.

PAUL S. GROBMAN (Neal DeYoung, Sharma & DeYoung, on the brief), New York, New York, for Appellant.

2

DANIEL A. POLLACK (Edward T. McDermott, Anthony Zaccaria, Minji Kim, on the brief), McCarter & English, LLP, New York, New York, for Appellees.

DENNIS JACOBS, Circuit Judge:

Plaintiff-appellant Joseph Mazzei initiated a class action against The Money Store et al., alleging, inter alia, overcharge of late fees on mortgages, and prevailed in a jury trial. The United States District Court for the Southern District of New York (Koeltl, J.) (i) granted defendants-appellees' post-verdict motion to decertify (under Federal Rule of Civil Procedure 23(c)(1)(C)) a class that was previously certified pursuant to Rule 23(a) and (b)(3); and (ii) entered judgment in favor only of Mazzei, the putative class representative.

We hold that a district court has power, consistent with the Seventh Amendment and Rule 23, to decertify a class after a jury verdict and before the entry of final judgment. We also hold that, in considering such decertification (or modification), the district court must defer to any factual findings the jury necessarily made unless those findings were "seriously erroneous," a "miscarriage of justice," or "egregious." Applying these principles, we conclude that

3

the district court did not abuse discretion in determining that Rule 23's requirements were not met and in decertifying the class.

An accompanying summary order affirms the denial of Mazzei's motion for a new trial as to a second claim.

Affirmed.

**BACKGROUND**

In 1994, Joseph Mazzei obtained a mortgage loan from his employer, The Money Store. At that time, The Money Store was a loan servicer and mortgage lender. Mazzei missed payments on the loan for years beginning in late 1997, and received three notices of default in 1998. In 1999, The Money Store changed ownership, and Mazzei was laid off. Soon after, The Money Store ceased originating loans and became HomEq Servicing Corp.

Early in 2000, The Money Store's servicing operator, TMS Mortgage Inc., notified Mazzei that he was in default; Mazzei's loan was "accelerated" (i.e., the entire sum of principal and interest became due) and foreclosure proceedings were begun. Mazzei avoided a foreclosure sale by filing for bankruptcy, and ultimately paid the full

4

balance of the loan, with interest and various default fees. These fees included, <u>inter alia</u>, attorney's fees, and ten late fees of $26.76 each--five of which were incurred after acceleration.

Mazzei then sued The Money Store, TMS Mortgage Inc., and HomEq Servicing Corp. (collectively, "The Money Store") for breach of contract, on behalf of a putative class, challenging the imposition of post-acceleration late fees (and attorney's fees[2]). Citing terms set forth in the Fannie Mae form loan documents that Mazzei signed when the mortgage loan was originated, Mazzei contended that the Note contemplated the imposition only of *pre*-acceleration late fees, and that the imposition of *post*-acceleration late fees violated the agreement.

Mazzei achieved certification of the class, defined as:

> All similarly situated borrowers who signed form loan agreements on loans which were owned or serviced by the defendants and who from March 1, 2000 to the present . . . were charged: (A) late fees after the borrower's loan was accelerated,

---

[2] The attorney's fees claim is disposed of in a summary order issued simultaneously with this opinion. Mazzei also asserted claims under the Fair Debt Collection Practices Act ("FDCPA"), the Truth in Lending Act ("TILA"), and the Real Estate Settlement Procedures Act ("RESPA"), as well as a claim of unfair deceptive business practices under California statutory law; none of these additional claims went to trial, and they are not at issue on this appeal.

and where the accelerated loan was paid off ("Post Acceleration Late Fee Class") . . . .

Order for Certification of Class Action, Mazzei v. Money Store, No. 01-CV-5694 (JGK) (RLE) (S.D.N.Y. Jan. 29, 2013), ECF No. 187; see also Mazzei v. Money Store, 288 F.R.D. 45, 56, 66-69 (S.D.N.Y. 2012).[3]

The class definition was later amended on consent to exclude borrowers who signed loan mortgage agreements after November 1, 2006, and (for administrative purposes) to close on June 2, 2014.  Order, Mazzei v. Money Store, No. 01-CV-5694 (JGK) (RLE) (S.D.N.Y. June 3, 2014), ECF No. 267.

The certified class action eventually went to trial. The jury returned a verdict in favor of Mazzei and the class on the late fee claims.  It awarded Mazzei $133.80, and it awarded the class approximately $32 million plus prejudgment interest.  (The jury found in favor of The Money Store on the remaining claims.)

After trial, and before the entry of judgment, The Money Store moved for decertification of the class pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), or, in the

---

[3] The district court declined to certify three additional potential classes that corresponded to three additional breach-of-contract theories.  See Mazzei, 288 F.R.D. at 57-62.

6

alternative, the entry of judgment as a matter of law on the class late fee claims pursuant to Federal Rule 50. The class was composed of borrowers whose loans were *either* *owned* by The Money Store (via origination or assignment) *or* *serviced* by it. Both motions were based in relevant part on Mazzei's failure to prove class-wide privity of contract between The Money Store and those borrowers whose loans it only serviced, and did not own. The district court agreed that Mazzei's failure to prove privity with respect to such absent class members defeated class certification on grounds of typicality and predominance. The district court therefore granted The Money Store's motion for decertification of the class. Mazzei v. Money Store, 308 F.R.D. 92, 106-07, 109-13 (S.D.N.Y. 2015). The district court also opined that it would have granted The Money Store's motion for judgment as a matter of law if decertification had not been appropriate. Id. at 113. Judgment was entered for Mazzei on his individual late fee claim.

Mazzei challenges the decertification[4] on the grounds, inter alia, that decertification is unavailable after a jury

---

[4] Mazzei also appeals the district court's denial of Mazzei's motion for a new trial on the fee-splitting claim. See Mazzei, 308 F.R.D. at 100-06. We affirm that decision in an accompanying summary order.

7

verdict in favor of a certified class; that the findings made to support decertification were incompatible with the Seventh Amendment; and that the Rule 23 requirements for class certification were satisfied.  We affirm.

# DISCUSSION

## I

Federal Rule of Civil Procedure 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  Mazzei argues nevertheless that a class may not be decertified after a jury verdict in its favor because such decertification is tantamount to overturning a jury verdict, for which the only procedural avenue available is judgment as a matter of law under Rule 50(b); and decertification would violate the class members' Seventh Amendment right to a jury trial.[5]

---

[5] Defendants do not argue that these arguments are waived, although it is unclear that Mazzei raised them in the district court.  In any event, because our waiver doctrine is "prudential, not jurisdictional, we have discretion to consider waived arguments, and we have exercised this discretion where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding." Bogle-Assegai v. Connecticut, 470 F.3d 498, 504 (2d Cir.

**A**

Federal Rule 23 and our case law confirm that a district court may decertify a class after a jury verdict and before the entry of final judgment.[6] In deciding an appeal of a denial of a motion to decertify after a jury verdict in a class's favor, we observed that "a district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1982) (discussing post-trial motion to decertify after jury verdict in favor of subclass); see also Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 596 (2d Cir. 1986) (affirming decertification of one class after bench trial based on evidence; reversing decertification of two other classes).

A district court's exercise of discretion is set forth clearly in both the wording and commentary of Rule 23. See Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies

---

2006) (internal quotation marks, citations, and brackets omitted). Because defendants do not argue waiver, and because Mazzei's argument involves a constitutional right and a question of law, we consider the argument.

[6] Of course, the Federal Rules authorize the use of additional post-trial procedural devices, such as a motion for a new trial. See, e.g., Fed. R. Civ. P. 59(a). Mazzei's argument either overlooks or ignores these procedures.

9

class certification may be altered or amended before final judgment."); Fed. R. Civ. P. 23(c)(1) advisory committee's notes to 2003 amendment ("A determination of liability after certification, however, may show a need to amend the class definition.  Decertification may be warranted after further proceedings."); see also 7AA Wright et al., Federal Practice & Procedure § 1785.4 (3d ed. 2016 update) ("Reference to the final judgment [in Rule 23(c)(1)(C)] avoids a possible ambiguity under the prior rule, making clear that after a determination of liability it may be permissible to amend the class definition or subdivide the class if it becomes necessary in order to define the remedy or if decertification is warranted.").

Indeed, because the results of class proceedings are binding on absent class members, see Fed. R. Civ. P. 23(c)(3), the district court has the affirmative "duty of monitoring its class decisions in light of the evidentiary development of the case."  Richardson v. Byrd, 709 F.2d 1016, 1019 (5th Cir. 1983) ("The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."); see Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812

(1985) ("[T]he Due Process Clause of course requires that the named plaintiff *at all times* adequately represent the interests of the absent class members." (emphasis added)). The power to decertify a class after trial when appropriate is therefore not only authorized by Federal Rule 23 but is a corollary.[7]

## B

The Seventh Amendment, which applies in federal court proceedings, is not to the contrary. The Amendment has two parts: The Trial by Jury Clause preserves a litigant's right to a jury trial in a subset of civil cases; the Reexamination Clause provides that "no fact tried by a jury,

---

[7] See also In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 141 (2d Cir. 2001) (concluding that district court did not abuse discretion in certifying class where it "specifically recognized its ability to modify its class certification order, sever liability and damages, or even decertify the class if such an action ultimately became necessary"), overruled on other grounds by In re IPO Sec. Litig., 471 F.3d 24 (2d Cir. 2006), and superseded by statute on other grounds as stated in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79, 238 F.R.D. 82, 100 (S.D.N.Y. 2006); Boucher v. Syracuse Univ., 164 F.3d 113, 118 (2d Cir. 1999) ("[U]nder Rule 23(c)(1), courts are 'required to reassess their class rulings as the case develops.'" (quoting Barnes v. Am. Tobacco Co., 161 F.3d 127, 140 (3d Cir. 1998))); Green v. Wolf Corp., 406 F.2d 291, 298 & n.10 (2d Cir. 1968) (Kaufman, J.) (a court should err on the side of certification because certification "is always subject to modification should later developments during the course of the trial so require" (quoting Esplin v. Hirsi, 402 F.2d 94, 99 (10th Cir. 1968))).

11

shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.

As to Mazzei, there is no Seventh Amendment issue at all. Mazzei will receive damages on his individual claim in the amount awarded him by the jury. And he has no constitutional right to represent a class; whether he may do so is purely a matter of Rule 23.

As to the class, there is no violation. The right of absent class members to adjudication by jury is unimpaired. Their claims survive by virtue of American Pipe tolling. See American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1978). Under this rule, the filing of a putative class action tolls the statute of limitations with respect to all absent would-be class members until the time class certification is denied. See American Pipe, 414 U.S. at 554; Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353-54 (1983). Therefore, any putative member of the decertified class who wishes to do so may file an individual action seeking breach-of-contract damages on a similar claim (so long as the individual action is instituted during whatever amount of time remains in the limitations period). See Crown, Cork & Seal, 462 U.S. at 347, 353-54.

12

The district court's decertification thus has the same effect as would a grant of a motion for a new trial pursuant to Federal Rule 59(a). The grant of such a motion does not mean that there must be a new trial, or that there will be one; it just means that there can be one if an individual claimant chooses to continue pursuit of the claim. It is beyond dispute that the grant of such a motion does not violate the Seventh Amendment. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 432-33 (1996); Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S. 525, 539-40 (1958); Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 250 (1940); Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012); United States v. Landau, 155 F.3d 93, 104-06 (2d Cir. 1998).

There are many procedural devices that impose "judicial control on juries," Binder v. Long Island Lighting Co., 57 F.3d 193, 202 (2d Cir. 1995), abrogated in part on other grounds in banc by Fisher v. Vassar Coll., 114 F.3d 1332, 1340 (2d Cir. 1997), and such controls are not only compatible with the Seventh Amendment jury trial right, but necessary to the institution. See Dagnello v. Long Island R.R. Co., 289 F.2d 797, 805 (2d Cir. 1961) ("The jury does not function alone, but in cooperation with the judge

13

presiding over the trial. . . . Without judicial supervision over what Blackstone called the 'misbehavior' of juries, a trial by jury would lack one of 'the essentials of the jury trial as it was known to the common law before the adoption of the Constitution.'" (footnotes omitted)). Permissible controls include certain procedures that were "not in conformity with practice at common law when the Amendment was adopted." Gasperini, 518 U.S. at 436 n.20.

The right of absent class members to a jury trial is protected, not impaired, by the Rule 23(c)(1)(C) decertification procedure, which protects their due process rights (and defendants') by ensuring that any class claim that proceeds to final judgment--and thus binds them--is fairly and appropriately the subject of class treatment. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011) ("Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 621 (1997) ("Subdivisions (a) and (b) [of Rule 23] focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives."); Shutts, 472 U.S. at 812 (consistent with the Due Process Clause, absent class

14

members may be bound to a class judgment only if they are adequately represented by the named plaintiffs); <u>Hansberry v. Lee</u>, 311 U.S. 32, 42-43, 45 (1940) (same); <u>see also</u> <u>supra</u> Part I.A.

**C**

Decertification in this case provokes a further question: the power of the court to make the findings that supported its ruling. Decertification was based on the district court's determination that Mazzei had failed to prove through class-wide evidence at trial that borrowers whose loans were only serviced (not owned) by The Money Store were nevertheless in a contractual relationship with The Money Store. This factual question--whether Mazzei proved that absent class members were in privity with The Money Store--was both relevant to the (de)certification motion *and* an element of the class's merits claim. And on the merits, the jury obviously found that privity has been established.

Normally, the district court resolves factual issues related to class certification, making its findings based on the preponderance of the evidence,[8] even if they overlap

---

[8] <u>See</u> <u>Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.</u>, 546 F.3d 196, 202-03 (2d Cir. 2008) (holding that the "preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements").

with the merits of the case. See Amgen v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1195 (2013) ("Merits questions may be considered to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); Dukes, 564 U.S. at 351 ("Frequently that 'rigorous [Rule 23] analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."). But such findings do not bind the trier of fact. In re IPO, 471 F.3d at 41. The question becomes: How does a jury's factual finding impact the district court's decision about whether decertification is appropriate or not?

We hold that when a district court considers decertification (or modification) of a class after a jury verdict, the district court must defer to any factual findings the jury necessarily made unless those findings were "seriously erroneous," a "miscarriage of justice," or "egregious." See Raedle, 670 F.3d at 418. This is the standard that a district court applies to a Rule 59 motion for a new trial on weight-of-the-evidence grounds; and we conclude that it is appropriate in this context as well.[9]

---

[9] The judge is permitted to "weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner," but "should

16

As to questions of fact that are not necessarily decided by the jury's verdict, the court can make its own factual findings based on the preponderance of the evidence as is usually done when making a determination about class certification.

For the reasons discussed supra (Part I.B), the Seventh Amendment is not violated by the district court's evaluation of trial evidence in ruling on the procedural issue of decertification. That is what trial judges do when considering a motion for a new trial on the ground that the verdict was against the weight of the evidence. See Landau, 155 F.3d at 106 (the Seventh Amendment does not prevent a district court from "substitut[ing] its view of the evidence for that of the jury, provided the judge is 'convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice'"). At the same time, we have explained that the judge's power to do so is in "tension" with the Seventh Amendment. Raedle, 670 F.3d at 418; Landau, 155 F.3d at 105 (same). Given that "tension" (here, with the Reexamination Clause), it is

_____

rarely disturb a jury's evaluation of a witness's credibility . . . simply because the judge disagrees with the jury." Raedle, 670 F.3d at 418 (citations and internal quotation marks omitted).

17

imprudent and likely improper to further relax the standard by which a trial court may "substitute its view of the evidence for that of the jury."  Landau, 155 F.3d at 106. By respecting the jury's work, the Seventh Amendment issue is avoided.[10]  This approach makes full use of the work the jury has already done; and it fits the post-trial procedural scheme set forth in Federal Rules 50(b) and 59(a).

Mazzei argues that post-verdict decertification should be constrained by the Rule 50 standard of "legally insufficient evidence."  See Fed. R. Civ. P. 50(a)(1); Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998).  That stringent standard is not called for because (unlike the grant of a Rule 50 motion) decertification does not resolve the claims of the class-- which withstand decertification and survive unimpaired.  The "seriously erroneous" formulation better comports with the district court's authority to manage the class action and to

---

[10]  See also 11 Wright et al., Federal Practice & Procedure § 2806 (3d ed. 2016 update) ("The judge's power to set aside the verdict is supported by clear precedent at common law and, far from being a denigration or a usurpation of jury trial, has long been regarded as an integral part of trial by jury as we know it.  On the other hand, a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of the judge's own doubts in the matter." (footnote omitted)).

protect the rights of absent class members, see, e.g., Fed. R. Civ. P. 23(d), (e); it respects the trial court's position as best-situated to evaluate class issues, see In re Sumitomo Copper Litig., 262 F.3d 134, 139 (2d Cir. 2001) (referring to Second Circuit's "longstanding view that the district court is often in the best position to assess the propriety of the class"); and it recognizes Rule 23's explicit contemplation of post-merits decertification, see Fed. R. Civ. P. 23(c)(1)(C).

**II**

A district court order granting or denying class certification is reviewed for abuse of discretion. Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010). This standard applies to the ultimate decision on class certification and to rulings on each of the Rule 23 requirements. Id. A district court decision granting certification is given greater deference than a decision denying certification (or, a fortiori, an order decertifying a class). See Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137 (2d Cir. 2015) (citing Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)).

19

A plaintiff seeking certification of a Rule 23(b)(3) damages class action has the burden to establish numerosity, commonality, typicality, adequacy of representation, predominance of common questions of law or fact, and the superiority of a class action to other procedures. Fed. R. Civ. P. 23(a), (b)(3); see Amgen, 133 S. Ct at 1191; Teamsters Local 445, 546 F.3d at 202-03. In opposing the decertification motion, Mazzei retained the burden to demonstrate that these requirements were satisfied. See Rossini, 798 F.2d at 596-600; cf. Rubinstein, Newberg on Class Actions § 7:22 (5th ed. 2016 update) (when a defendant moves for an order denying class certification, the burden to prove compliance with Rule 23 remains with the plaintiff).

The class included borrowers whose loans were *either* owned or serviced by The Money Store. To prove a breach-of-contract claim on its behalf, Mazzei was required to prove, inter alia, that class members were in a contractual relationship with defendants. See Diesel Props S.R.L. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011). The decertification was based on Mazzei's failure to prove through class-wide evidence the existence of privity between The Money Store and those class members whose loans

20

were serviced but not owned by it. This factual question was relevant both to the merits of the class claim and to the certification inquiry.

The jury found that privity was proven; the district court found to the contrary, and determined that typicality and predominance were therefore both lacking. As held supra (Part I.C), the district court was required to defer to the jury's finding of fact as to privity unless the finding was "seriously erroneous," a "miscarriage of justice," or "egregious." It is therefore significant that the district court ruled in the alternative that the evidence for such a finding was legally insufficient.[11] Having found the evidence legally insufficient, the court a fortiori found that the jury's finding was at least "seriously erroneous."

This was not an abuse of discretion. We also conclude that the district court did not abuse discretion in

---

[11] Defendants moved in the alternative for judgment as a matter of law pursuant to Rule 50(b), and the district court explained that it would grant this motion were it to reach it. See Mazzei, 308 F.R.D. at 113 ("[D]efendants would be entitled to judgment as a matter of law on the claim on behalf of the Late Fee Class because of the 'complete absence of evidence' supporting a contractual relationship between the members of the Late Fee Class and the defendants." (quoting Galdieri-Ambrosini, 136 F.3d at 288-90)). In fact, the district court appears to have applied the Rule 50 standard in adjudicating the motion for decertification. See id. at 110-13.

determining that, given the failure of class-wide evidence as to privity at trial, Rule 23(a) and (b)(3) requirements were not satisfied and decertification was therefore warranted.

**A**

To establish privity, Mazzei relies exclusively on testimony by Adam Levitin, Mazzei's opening expert witness concerning mortgages and mortgage securitizations, and the single Pooling and Service Agreement ("PSA") introduced at trial, which applied to Mazzei's 1994 loan.[12] Levitin testified generally as to mortgages and securitizations, described the life of a hypothetical loan issued to "Betty Borrower," and (in the course of that testimony) opined that the hypothetical servicer of the hypothetical borrower's loan would be assigned rights to payment; and that if the servicer did not credit those payments Betty Borrower could sue the servicer for breach of contract. App'x 2787-89; see also App'x 2792 (opining that "once you have delegated duties under the contract, you have stepped into the shoes of the original party to the contract").

---

[12] Mazzei's spoliation-based argument was not raised below and is therefore waived. See In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 133 (2d Cir. 2008); see also Dist. Ct. Dkt. 497; App'x 5302-17.

Levitin also opined that the PSA for Mazzei's loan (which was originated by a defendant entity in 1994) imposed certain duties on the servicer (another defendant) in connection with servicing the loan, including the power to waive or modify the terms of the loan and to collect checks, assess fees, etc. App'x 2804-05. Mazzei's PSA, Levitin opined, was "typical" of the securitization industry, "not an outlier deal." App'x 2811.

However, Levitin specifically conceded that he was "expressing no opinion whatsoever on the defendants in this case." App'x 2813; see also App'x 2807 (describing "the role I've been asked to play here explaining the background of how mortgage lending works today"). And there was no other evidence linking Levitin's testimony about the hypothetical borrower and about the mortgage and securitization industries generally to the particular loans of absent class members.[13] We conclude that, given

---

[13] Mazzei argues that The Money Store did not object to Levitin's testimony, and that testimony regarding industry custom and practice is admissible in breach-of-contract actions. See Br. of Appellant 48; Reply Br. 17 (citing cases). True; but the issue is whether the testimony (admissible or not) supported the jury finding that a contract existed between defendants and absent class members. See Cherry River Music Co. v. Simitar Entm't, Inc., 38 F. Supp. 2d 310, 319 & n.56 (S.D.N.Y. 1999) ("industry custom and usage . . . 'cannot create a contract where there has been no agreement by the parties'" (quoting

23

Levitin's disclaimer as to the particulars of the case, and for substantially the reasons stated in the district court's opinion, Levitin's testimony was not an impediment to the court's conclusion that the jury's verdict was "seriously erroneous," a "miscarriage of justice," or "egregious."[14]

**B**

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," Dukes, 564 U.S. at 349, by "effectively 'limit[ing] the class claims to those fairly encompassed by the named plaintiff's claims,'" General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982) (quoting General Tel. Co. of Nw. v. EEOC, 446 U.S. 318, 330 (1980)).

Typicality requires that "the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." Cardidad v. Metro-N. Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999) (internal quotation marks

---

Stulsaft v. Mercer Tube & Mfg. Co., 43 N.E.2d 31, 33 (N.Y. 1942)) (citing cases)).

[14] Since the Rule 59(a) standard applies in this context, we need not decide whether Levitin's generalized testimony was legally insufficient to support a jury finding that class members whose loans were not originated by (or expressly assigned to) The Money Store were in privity.

24

omitted), <u>overruled on other grounds by</u> <u>In re IPO</u>, 471 F.3d 24. One purpose of the typicality requirement is "to ensure that . . . 'the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" <u>Marisol A. ex rel. Forbes v. Giuliani</u>, 126 F.3d 372, 376 (2d Cir. 1997).

The Money Store did not deny its contractual relationship with class members (such as Mazzei) whose loans it owned; but it did dispute privity as to other class members. Whether borrowers whose loans were serviced but not owned by The Money Store were in fact in privity with The Money Store is an issue central to the claims of those class members. The issue is not central to Mazzei's individual claim (a misalignment of interests that may be one reason for Mazzei's failure to introduce sufficient evidence on their behalf). The district court's post-trial ruling as to typicality was not an abuse of discretion.[15]

---

[15] Mazzei argues for the first time on appeal that, if he was no longer "typical," the court should have simply substituted a new class representative. This argument is waived for failure to raise it below. <u>See</u> <u>In re Nortel Networks</u>, 539 F.3d at 133; <u>see also</u> Dist. Ct. Dkt. 497; App'x 5302-17.

"The 'predominance' requirement of Rule 23(b)(3) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Myers, 624 F.3d at 547 (quoting Amchem, 521 U.S. at 623). "The requirement's purpose is to 'ensure[] that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Id. (quoting Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir. 2007)). "Therefore the requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" Id. (quoting Moore, 306 F.3d at 1252).

A class-wide resolution to the privity question was not possible because, without *class-wide* evidence that class members *were* in fact in privity with The Money Store, the fact-finder would have to look at every class member's loan documents to determine who did and who did not have a valid

claim. See Dukes, 564 U.S. at 351 ("What matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009))).

The district court identified the common questions raised in the pleading: whether defendants charged post-acceleration late fees and whether this breached the Fannie Mae form agreement. It was "within the range of permissible decisions" for the court to determine that these questions did not predominate over the individual questions of whether each class member was in a contractual relationship with defendants. See Myers, 624 F.3d at 550-51 (affirming denial of class certification for failure to demonstrate predominance of common issues over individualized defenses).

**III**

"[O]rdinarily, if a court discerns a conflict . . . the proper solution is to create subclasses of persons whose interests are in accord." Boucher v. Syracuse Univ., 164

27

F.3d 113, 118-19 (2d Cir. 1999) (quoting <u>Payne v. Travenol</u> <u>Labs, Inc.</u>, 673 F.2d 798, 812 (5th Cir. 1982)).  Here, however, there was no apparent basis on which the court or the parties could have determined which members of the Late Fee Class had loans that were owned by The Money Store, and which had loans that were only serviced by The Money Store. So decertification was appropriate rather than a narrowing of the class definition or creation of subclasses.

Mazzei cites testimony that The Money Store originated 130,000 of the approximately 185,000 loans that were being serviced by it in 2000, the beginning of the class period, and speculates that the Late Fee Class's loans were among these defendant-originated loans.  There is no evidence at all about which, if any, of these loans satisfied criteria for membership in the class.  Notably, The Money Store stopped originating loans in 2001[16]; by 2003, The Money Store was servicing approximately 380,000 loans; and the class period extended into 2014.  Over its full span of years, the database contained over one million loans.  It is entirely unclear how many loans serviced by The Money Store during the full class period were owned by it.

---

[16] One example loan that Mazzei's database expert presented to the jury was originated in 2006--this loan could not have been originated by The Money Store.

28

**CONCLUSION**

For the foregoing reasons, the judgment is affirmed.