16-3537-cv
*Monaco v. Sullivan*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of June, two thousand eighteen.

Present:
> BARRINGTON D. PARKER,
> DEBRA ANN LIVINGSTON,
> DENNY CHIN,
> *Circuit Judges*.

———————————————————————

GREGORY R. MONACO, on behalf of himself and other similarly situated individuals,

> *Plaintiff-Appellee*,

v.                                                                              16-3537-cv

ANN MARIE T. SULLIVAN, in her official capacity as Commissioner of the New York State Office of Mental Health, CATHERINE A. CAHILL, M.D., S. SARWAL, personally also known as SARWAL, M.D., WILLIAM PACKARD, M.D., personally, B. PALMA-ACQUINO, M.D., personally, J. TUZEL, R. DAVE, personally,

> *Defendants-Appellants*,

ALAN AVILES, in his official capacity as the Director of the New York City Health and Hospitals Corporation, DOMINICK STANZIONE, in his official capacity as Acting Director of the Psychiatric Unit of

1

Long Island College Hospital, M.D. S. TUZEL, KATHLEEN KELLY, PATRIC A. MAHONEY, in his official capacity of himself and all other sheriffs and other individuals who transport incompetent defendants from jails to psychiatric hospitals in New York State, ROBERT J. CIMINO, Suffolk County Attorney, MARTIN HORN, in his official capacity as Commissioner of the New York City Department of Corrections, ALFRED TISCH, in his official capacity as Sheriff of Suffolk County, KENNETH SKODNICK, in his official capacity as chairman of Psychiatry at Nassau University Medical Center, M.D. MARC SEDLER, in his official capacity as Chairman of the Department of Psychiatry at University Hospital of the State University of New York at Stony Brook, BENJAMIN CHU, in his official capacity as the Director of the New York City Health and Hospital Corporation, M.D. NYAPATI RAO, in his official capacity as Chairman of Psychiatry at Nassau University Medical Center, V. GORYALIS, ALAN WEINSTOCK, BERNARD KERIK, LOUIS MARCOS, in his official capacity as the Director of the New York City Health and Hospital Corp., MARTIN KESSELMAN, on behalf of directors or chief operating officers of state licensed and governmental operated in-patient psychiatric units in the Eastern District of New York, M.D. ARNOLD LIGHT, on behalf of himself and directors or chief operating officers of privately operated in-patient psychiatric units located in the Eastern District of New York, WILLIAM FRASER, in his official capacity of Commissioner of the New York City Dept. of Corrections,

*Defendants.*

_____

| For Plaintiff-Appellant Monaco: | WILLIAM M. BROOKS, Central Islip, NY. |
|---|---|
| For Defendants-Appellees Sullivan, Cahill, Sarwal, Acquino, Tuzel, and Dave: | SETH M. ROKOSKY (Barbara D. Underwood, Solicitor General, Steven C. Wu, Deputy Solicitor General, Andrew Rhys Davies, Assistant Solicitor General of Counsel, *on the brief*), *for* Eric T. Schneiderman, Attorney General, State of New York. |

2

| | |
|---|---|
| For Defendant-Appellee William Packard M.D.: | DREW W. SCHIRMER, Principal Assistant County Attorney, *for* Dennis M. Brown, Suffolk County Attorney, Hauppauge, NY. |
| For Amici Mental Hygiene Legal Service, The National Association for Rights Protection and Advocacy, Advocacy Unlimited, Inc., The Connecticut Legal Rights Project, Inc., Judge David L. Bazelon Center for Mental Health Law, and Disability Rights Maine: | Roberto J. Gonzalez, Michelle S. Kallen, Laurence Tai, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC. |

Appeal from a September 27, 2016 judgment of the United States District Court for the Eastern District of New York (Garaufis, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Gregory R. Monaco appeals from a September 27, 2016 judgment of the United States District Court for the Eastern District of New York (Garaufis, *J.*). Monaco originally brought this suit in 1998, alleging due process violations against four psychiatrists who evaluated and treated him when civilly committed (Defendants-Appellees Sarwal, Palma-Acquino, Tuzel, and Dave), and another psychiatrist who treated Monaco when he was incarcerated (Defendant-Appellee Packard). Monaco also sought to represent a subclass of plaintiffs in a challenge to the clinical methodology that New York State's Office of Mental Health ("OMH") employs when making civil commitment determinations. In 2002, the district court granted summary judgment to Sarwal, Palma-Acquino, Tuzel, and Dave and certified the subclass. In a March 31, 2016 decision, the district court decertified Monaco's subclass and granted summary judgment to Packard. The district court then entered final judgment after the parties agreed that no issues remained. On appeal, Monaco challenges the district court's grant of summary judgment to Sarwal, Palma-

Acquino, Tuzel, Dave, and Packard, and its decertification order. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## 1. Background

### a. New York's civil commitment procedures

In New York, a criminal defendant is incapacitated and incompetent to stand trial if the defendant, "as a result of mental disease or defect[,] lacks capacity to understand the proceedings against him or to assist in his own defense." N.Y. Crim. Proc. Law (CPL) § 730.10(a). A court must dismiss charges against any defendant who meets this standard, and issue an order committing the defendant to OMH "for care and treatment in an appropriate institution." §§ 730.30(1), 730.40(1). Since 1988, when a state court held that this procedure unconstitutionally permitted the civil commitment of people who were not dangerous, OMH has evaluated any prisoner transferred under CPL § 730.40 for dangerousness. *See Ritter v. Surles*, 144 Misc. 2d 945, 949–52 (Sup. Ct. Westchester Cnty. 1988) (holding that the pre-1988 regime was unconstitutional); *Charles W. v. Maul*, 214 F.3d 350, 356 (2d Cir. 2000) (explaining the post-1988 regime). Absent such a finding, OMH will release a prisoner within seventy-two hours of transfer. *See Charles W.*, 214 F.3d at 356.

New York's Mental Hygiene Law (MHL) establishes civil commitment standards and procedures for OMH. Upon certification by two examining physicians and an application by a designated person, OMH may involuntarily civilly commit people for up to sixty days without court authorization if they are mentally ill and pose a risk of harm to themselves or others. MHL §§ 9.27(a), 9.33. OMH must notify New York Mental Hygiene Legal Services ("MHLS") immediately and the patient's nearest relative within five days of the patient's involuntary commitment. § 9.29(a), (b). MHLS, the patient, and any relative or friend of the patient may

4

request a judicial hearing to challenge this initial sixty-day commitment. § 9.31(a). A hospital director who wishes to extend the civil commitment beyond sixty days may apply for a court order to authorize continued retention. § 9.33(a). A patient has a right to counsel at any hearing in which he requests release or the hospital director requests continued retention. N.Y. Jud. Law § 35(1)(a). A patient "who has been denied release or whose retention . . . has been authorized" by a court order may "obtain a rehearing and a review of the proceedings" before a different state court judge and a jury within thirty days. MHL § 9.35. People may also voluntarily commit themselves, and it is, under New York law, the "duty" of all state and local mental health professionals "to encourage" people in need of mental health treatment to apply for voluntary commitment. §§ 9.13(a), 9.35(a); *see also Project Release v. Prevost*, 722 F.2d 960, 973–75 (2d Cir. 1983) (holding that New York's civil commitment scheme is consistent with substantive and procedural due process under the United States Constitution).

### b. Monaco's incarceration and civil commitment

In February 1998, Monaco was arrested for harassment after threatening to kill his mother, and the Town of East Hampton Justice Court ordered Monaco to refrain from any criminal behavior towards her. He threatened to kill his mother again the next month and was charged with criminal contempt and harassment. Monaco was incarcerated at the Suffolk County Correctional Facility ("Suffolk County Correctional") from March 24 to May 8, with the exception of seven days in which he was civilly committed to Eastern Long Island Hospital ("ELIH").

When he was initially admitted to Suffolk County Correctional, Monaco was prescribed Lithium, a mood stabilizer used to treat bipolar disorder, by a psychiatrist at the correctional facility. Shortly after this, Packard prescribed him Prolixin, a neuroleptic/antipsychotic medication that is usually used to treat schizophrenia. Monaco was taken to ELIH for a week, but was

5

transferred back to the jail after he threw a chair at a social worker. Packard examined Monaco when he returned and found him to be more coherent than he had been before the transfer. Monaco's treating physician at ELIH told Packard that Monaco had been free from thought disorders for his last three days at ELIH, and that Monaco had been prescribed only Prolixin and Klonopin at ELIH. Packard encouraged Monaco to take the Prolixin that he had been prescribed, but did not prescribe him any Lithium.

While he was in jail, the Town of East Hampton Justice Court ordered that Monaco be subject to psychiatric examination. Pursuant to this order, Packard and Nicholas Aiello, Ph.D., concluded that Monaco was incompetent and incapacitated under CPL § 730.10. The court then dismissed the criminal charges against Monaco and committed him to OMH pursuant to CPL § 730.30. Monaco was discharged to the Pilgrim Psychiatric Center ("Pilgrim") on May 8.

Three days later, Sarwal, Palma-Acquino, and Tuzel, all psychiatrists employed by Pilgrim, examined Monaco and concluded that he required in-patient psychiatric hospitalization and treatment. Per their certification, Monaco was involuntarily committed under MHL § 9.33. Monaco's attorney filed a petition for a writ of habeas corpus on his behalf, and a state court judge held a hearing for Monaco to challenge his commitment a few days later. A psychiatrist who had examined Monaco in the presence of his attorney testified that Monaco would be a danger to others if he were released. Monaco, who was present at this hearing and also testified in his own defense, was able to cross-examine the psychiatrist. Before making its decision, the court requested additional medical records from Monaco and appointed an independent psychiatrist to examine him. This psychiatrist confirmed that Monaco required in-patient care at Pilgrim. On June 3, the court issued an order authorizing Monaco's continued retention. Monaco chose not to petition for a rehearing and review under MHL § 9.35.

6

Shortly before Monaco's sixty-day involuntary commitment period would expire, his treating physician, Dave, encouraged Monaco to voluntarily commit himself under MHL § 9.13. Monaco did so, but alleges that he was coerced. Dave and Monaco both attested during discovery that Dave told Monaco that she would recommend that he be involuntarily committed if he did not voluntarily commit himself. Dave attested that she believed Monaco needed continued treatment and observation. She encouraged Monaco to voluntarily commit himself because she believed he had "a right to be involved in the treatment." Joint App. 473. But she denied threatening him with indefinite commitment if he refused to sign.

In February 1999, while Monaco was voluntarily committed, his attorney filed a notice of appeal from the June 3, 1998 court order authorizing his detention. The Appellate Division dismissed the appeal as moot three months later.

### c. Procedural history

On May 5, 1998, while he was still incarcerated at Suffolk County Correctional, Monaco filed suit in the United States District Court for the Eastern District of New York (Sifton, *J.*) against various state and local officials, challenging New York's civil commitment regime and requesting declaratory and injunctive relief.

In 1999, the district court certified a plaintiff class of all people "who have been or will be: (1) charged with a minor felony or misdemeanor, (2) evaluated to determine whether or not they are competent to stand trial, and (3) found by court appointed psychiatrists to lack the capacity to stand trial and awaiting a determination of the competency issue by the local criminal court." *Monaco v. Stone*, 187 F.R.D. 50, 63 (E.D.N.Y. 1999). A week later, Monaco filed his Second Amended Complaint. This contained individual § 1983 claims for damages against the state and local officials, as well as Packard, Sarwal, Palma-Acquino, Tuzel, and Dave. As relevant here, he

7

alleged that Packard, by failing to prescribe him Lithium when he had bipolar mood disorder, was deliberately indifferent to his medical needs; Sarwal, Palma-Acquino, and Tuzel committed him when he was not in fact dangerous; and Dave coerced him to sign the voluntary commitment forms. He further alleged that the clinical methodology that psychiatrists employ at several OMH hospitals when making civil commitment decisions is inaccurate, and also that OMH psychiatrists conclude that patients are dangerous as pretext for their desire to treat otherwise non-dangerous people. He did not, however, challenge Pilgrim's commitment practices, beyond his individual claims.

Monaco filed a third complaint in March 2000, which listed a new plaintiff, the Mental Disability Law Clinic at Touro Law Center. This complaint sought to divide the certified plaintiff class into two subclasses. The first would consist of all people who met the certified class's three prongs and, "if remanded, [would] be subjected to a civil commitment evaluation" under the MHL. Joint App. 220. The second would consist of all people in Kings, Queens, Richmond, Nassau, and Suffolk Counties "who are subject to evaluation" under the MHL "to determine whether or not they satisfy the criteria for civil commitment." *Id.* at 221. As the litigation progressed, the first subclass came to be known as the "Incompetency Subclass," the second as the "Civil Commitment Subclass."

In December 2002, the district court granted summary judgment to Sarwal, Palma-Acquino, Tuzel, and Dave, and certified the Incompetency and Civil Commitment Subclasses. *See Monaco v. Stone*, No. CV-98-3386, 2002 WL 32984617, at *46 (E.D.N.Y. Dec. 20, 2002) (Sifton, *J.*). The court first held that Sarwal, Palma-Acquino, and Tuzel were entitled to judgment as a matter of law because the state court's June 1998 order authorizing Monaco's civil commitment collaterally estopped him "from asserting that he was improperly certified as dangerous." *Id.* at

8

\*30. Second, the court held that there was no material dispute that Dave's conduct was consistent with accepted professional standards and MHL § 9.21(a) in particular, which requires state mental health professionals to encourage voluntary commitments. Because mental health professionals' treatment decisions are "presumptively valid" and this presumption is overcome "only when the decision by the professional is . . . a substantial departure from accepted professional judgment, practice, or standards," *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982), the court held that Dave was also entitled to summary judgment. Finally, the court certified the Incompetency and Civil Commitment Subclasses and appointed the Mental Disability Law Clinic as class representative for both and Monaco as class representative for the Incompetency Subclass only. Monaco could not serve as a Civil Commitment Subclass class representative for lack of typicality, the court concluded, because he was collaterally estopped from relitigating the state court's dangerousness finding.

In March 2016, the district court granted Packard's motion for summary judgment and decertified the Civil Commitment and Incompetency Subclasses. *See Monaco v. Hogan*, No. 98CV3386NGGRML, 2016 WL 1322431, at \*12 (E.D.N.Y. Mar. 31, 2016) (Garaufis, *J.*). The record showed at most that Packard should have diagnosed Monaco with bipolar disorder. Yet there was no dispute that Packard diagnosed Monaco with schizophrenia, not bipolar disorder, and prescribed him appropriate medications for this diagnosis. Monaco had thus produced no evidence that Packard was subjectively aware of the risks to which he was exposing Monaco, which was essential to Monaco's case. Accordingly, Packard was entitled to judgment as a matter of law on this issue. *See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (holding that a person detained before trial may bring a deliberate indifference claim only if she establishes that the defendant *knowingly* disregarded a risk of harm to the plaintiff). The court then decertified both subclasses

9

because neither had an adequate representative. The previous month, the parties had jointly stipulated that the Mental Disability Law Clinic was no longer authorized to prosecute the case and therefore could not serve as a plaintiff. This left Monaco as the only named plaintiff. The court accordingly decertified the Civil Commitment Subclass because it lost its only representative. The court also held that Monaco's claims were no longer typical of the Incompetency Subclass because he was collaterally estopped from challenging the state court's June 1998 order authorizing his commitment. The Incompetency Subclass thus no longer had any class representatives either, so the district court decertified it.

The parties jointly stipulated that the district court's March 2016 decision disposed of the case's remaining active issues. Accordingly, the court entered final judgment on September 27, 2016. On appeal, Monaco argues that the district court erred in (1) granting summary judgment to Sarwal, Palma-Acquino, Tuzel, Dave, and Packard, and (2) decertifying the Incompetency Subclass. For the reasons that follow, we disagree.[1]

## 2. Analysis

### a. Standard of review

A district court's ruling on a motion for summary judgment is reviewed *de novo*. *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 29 (2d Cir. 2017). Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Estate of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d

---

[1] Monaco also contends on appeal that we should hold that there is a material question of fact as to whether several State-run psychiatric hospitals use constitutionally deficient clinical methods when evaluating whether patients are dangerous, and as to whether these psychiatrists commit patients for pretextual reasons. Monaco was not committed at any of these hospitals, nor has he contended that he is likely to be in the future. Because we affirm the district court's decertification order, Monaco is no longer a class representative and lacks standing to challenge these hospitals' clinical procedures on his own behalf. We therefore lack jurisdiction to reach this issue.

10

Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). "We review a district court's denial of class certification for abuse of discretion. To the extent that the court's decision was based on conclusions of law, we review such conclusions *de novo*, and to the extent that its decision was based on findings of fact, we review such findings for clear error." *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 86 (2d Cir. 2015).

### b. Monaco's claims for individual relief

#### i. Sarwal, Palma-Acquino, and Tuzel

Monaco first challenges the district court's grant of summary judgment to Sarwal, Palma-Acquino, and Tuzel on collateral estoppel grounds. Under New York law, defendants such as these may invoke collateral estoppel if (1) there is "an identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and (2) there was "a full and fair opportunity to contest the decision now said to be controlling." *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 71 (1969); *see also* 28 U.S.C. § 1738 (requiring federal courts to give a state court's judgment the same preclusive effect it would have in the state where the judgment was rendered). Below, Monaco did not contest that the state court necessarily decided that he was dangerous in 1998, nor did he dispute that this would necessarily be decisive of his individual claims for relief. He has therefore forfeited his right to argue that the defendants failed to establish the first prong of the collateral estoppel test. *See Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 615 (2d Cir. 2016). Monaco nonetheless contends that they have not satisfied the second prong.

The district court held that Monaco had an extensive opportunity to litigate his dangerousness before the state trial court. He was represented by an attorney, testified on his own behalf, cross-examined witnesses, and was committed only after the judge obtained additional medical records and ordered a new, independent psychiatric review. *See Kulak v. City of New York*,

11

88 F.3d 63, 72 (2d Cir. 1996) (holding that a patient who challenged his commitment in a similar state court civil commitment proceeding had a "full and fair opportunity to litigate the issues of his mental illness and risk of harm"). Monaco also chose not to petition for rehearing and review before a jury and a new judge under MHL § 9.35. *See Schwartz*, 24 N.Y.2d at 72 (explaining that courts should consider "various factors" when assessing whether a plaintiff had a full opportunity to litigate, including "the use of initiative, the extent of the litigation, [and] the competence and experience of counsel"). Monaco does not challenge any of this and focuses instead on his inability to obtain appellate review of the state trial court order. He contends that he could have done so only if he moved for *in forma pauperis* status and calendar preference, received his trial transcript, fully briefed the case, and had his case heard and decided by the Appellate Division. It would have been impossible to do all of this in just over a month, which is when the trial court order was set to expire and his case would have become moot. According to Monaco, this means that he did not have a full and fair opportunity to litigate the case. We disagree.

A party who "has not had an opportunity to appeal an adverse finding . . . has not had a full and fair opportunity to litigate that issue." *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996). This rule generally covers cases in which a party is prohibited from appealing "as a matter of law," not those in which a plaintiff believes an appeal would be futile for mootness reasons. Restatement (Second) of Judgments § 28(1); *see also Johnson*, 101 F.3d at 795–96 (applying the rule to a suppression hearing in a criminal case). But even assuming *arguendo* that the rule would cover cases like Monaco's, Monaco did appeal, and the Appellate Division then dismissed his case as moot. Under New York law, an appellate court's dismissal of a case on mootness grounds leaves the lower court's decision intact for preclusion purposes, unless the appellate court specifically directs the lower court to vacate its earlier decision. *See Adirondack League Club, Inc. v. Sierra*

12

*Club*, 92 N.Y.2d 591, 608 (1998); *Matter of Hearst Corp. v. Clyne*, 50 N.Y.2d 707, 718 (1980). When it dismissed Monaco's appeal as moot, the Appellate Division did not vacate the trial court order, and so the trial court order had preclusive effect. *See also* Restatement (Second) of Judgments § 28 cmt. a (1982) (explaining that, in many jurisdictions, "to avoid the impact of issue preclusion, [] the appellate court [must] reverse or vacate the judgment below and remand with directions to dismiss"). For these reasons, summary judgment was properly granted on Monaco's claims against Sarwal, Palma-Acquino, and Tuzel.

ii.     Dave

Monaco next argues that the district court erred in granting summary judgment for Dave. When a plaintiff sues a mental health professional for wrongful commitment, "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323; *see also Rodriguez v. City of New York*, 72 F.3d 1051, 1063 (2d Cir. 1995). The court held that the record established, beyond any genuine dispute, that Dave met this standard. On appeal, Monaco asserts that Dave is not entitled to *Youngberg* deference because Dave "coerc[ed]" Monaco into voluntarily committing himself. Reply Br. 20. But MHL § 9.21(a) requires mental health professionals like Dave to encourage voluntary commitments. *See also Matter of State v. Little Luke KK.*, 72 A.D.3d 135, 141 (3d Dep't 2010) ("OMH does have an obligation to treat its patients in a manner that encourages them to seek and pursue treatment on a voluntary basis[.]"). Complying with this duty can hardly amount to "a substantial departure from accepted professional judgment, practice, or standards." *Youngberg*, 457 U.S. at 323. That Monaco, in his brief, conclusorily states that Dave

13

"coerc[ed]," rather than "encouraged" him has no legal import. The district court was therefore correct to hold that Dave was entitled to summary judgment.

### iii.    Packard

Monaco also challenges the district court's grant of summary judgment on his deliberate indifference claim against Packard arising from Monaco's incarceration at Suffolk County Correctional. "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "This means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' . . . showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* But even if the plaintiff meets this test, "the doctrine of qualified immunity will shield [a state officer] from liability for damages if his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (internal citations and alterations omitted).

The district court held that Monaco failed to make an adequate showing to survive summary judgment on either the objective or the subjective prongs. When assessing the subjective prong, the district court applied *Caiozzo*, where we held that a plaintiff must show "that the government-employed defendant disregarded a risk of harm to the plaintiff *of which the defendant was aware*." 581 F.3d at 71 (emphasis added). Monaco failed to meet this standard, the court concluded, because the record contained no evidence suggesting that Packard *knew* that his failure to prescribe Lithium posed a threat to Monaco. On appeal, Monaco does not dispute that he would

14

not meet the *Caiozzo* test. He instead points out that this Court overruled *Caiozzo*. In *Darnell*, decided a year after the district court's decision in this case, we held that a plaintiff can meet the subjective prong of the deliberate indifference test as long as the defendant "should have known" that his action "posed an excessive risk to [the plaintiff's] health or safety." 849 F.3d at 35. Monaco therefore argues on appeal that we should vacate the district court's grant of summary judgment because it applied the now-defunct *Caiozzo* standard, and a jury could reasonably conclude that Packard acted recklessly under *Darnell*. We disagree.

Assuming *arguendo* that Monaco is correct that Packard's failure to prescribe Lithium was reckless, Packard would still be entitled to qualified immunity. *Darnell* was decided in 2017 and thus could not have clearly established that reckless medical treatment amounts to deliberate indifference at the time Packard treated Monaco. Indeed, before *Caiozzo*, we had never decided this issue at all. *See Caiozzo*, 581 F.3d at 69–70; *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (holding that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))). Because Packard did not violate clearly established law when he treated Monaco in 1998, the district court did not err in granting summary judgment on this claim. *See Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*, 136 F.3d 273, 275 (2d Cir. 1998) ("[W]e may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court." (quoting *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 68 (2d Cir. 1991)).

### c. The March 2016 decertification order

Finally, Monaco argues that the district court abused its discretion in decertifying the Incompetency Subclass. The court decertified this Subclass because, of the two original

15

representatives, the Mental Disability Law Clinic was no longer authorized to prosecute the action, and Monaco was not a typical member of the Subclass. *See Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016) ("A plaintiff seeking certification of a Rule 23(b)(3) damages class action has the burden to establish . . . typicality . . . ."), *cert. denied*, 137 S. Ct. 1332 (2017). "Typicality requires that 'the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Id.* (quoting *Caridad v. Metro–N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)) (internal alterations omitted). This requirement "ensure[s] that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Mazzei*, 829 F.3d at 270 (quoting *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)) (internal alternations and quotation marks omitted). The district court concluded that Monaco was an atypical member of the class because he "was precluded from asserting that he was not dangerous as a substantive matter and [] substantive dangerousness was central to the class's claims." *Monaco*, 2016 WL 1322431, at *6.

On appeal, Monaco argues that the district court overlooked one of the Subclass's claims. His seventh cause of action alleged that physicians at OMH-operated facilities, "when examining allegedly mentally ill individuals for civil commitment purposes," employ a clinical method that does "not promise some degree of accuracy," which results "in the confinement of nondangerous individuals." Joint App. 1943. Critically, in his view, he alleged that both the confinement of nondangerous people *and* the imperfect clinical methodology violate due process. *Id.* Even if he may not challenge the wrongful commitment of nondangerous people, Monaco contends, he is not precluded from challenging the *clinical method* that psychiatrists employ when making commitment decisions.

16

But the district court disposed of this argument below. Monaco's claims were still not typical of the Subclass because, once he challenged Pilgrim's initial commitment order, his "procedural history diverged from a typical commitment," the court explained. *Monaco*, 2016 WL 1322431, at \*6; *see also* 1 *Newberg on Class Actions* § 3:34 (5th ed.) (explaining that the class representative's claims must "have the same essential characteristics as the claims of the class at large" (quoting *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009)). Monaco received a hearing before a judge, during which he testified and cross-examined witnesses. The judge decided to approve his involuntary commitment only after he received additional medical records, and two additional psychiatrists confirmed the three Pilgrim psychiatrists' initial diagnosis. The accuracy of their clinical methodology thus does not seem to "occupy essentially the same degree of centrality" to his claim as it does for the other class members, *Mazzei*, 829 F.3d at 270, the district court explained, because all five psychiatrists concluded that Monaco was dangerous, and the state court judge believed these conclusions to be sufficiently reliable. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.") (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir. 1990)). Monaco does not address any of the district court's analysis. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). Therefore, we conclude that the district court did not abuse its discretion in concluding that Monaco was an atypical member of the Subclass and decertifying the Subclass.

\*    \*    \*

We have considered Monaco's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk