21-2696-cv
*Mazzei v. The Money Store*

# In the
# United States Court of Appeals
## For the Second Circuit

———————————————————

August Term, 2022

No. 21-2696

JOSEPH MAZZEI, INDIVIDUALLY AND ON BEHALF OF THE FEE-SPLIT CLASS,

*Plaintiff-Appellant,*

v.

THE MONEY STORE, HOMEQ SERVICING INC., TMS MORTGAGE, INC., WELLS FARGO BANK, N.A.,

*Defendants-Appellees.*

———————————————————

Appeal from the United States District Court
for the Southern District of New York.
No. 21-2696
Analisa Torres, District Judge, Presiding.
(Argued September 7, 2022; Decided March 15, 2023)

Before:　WALKER, PARKER, and LEE, *Circuit Judges*.

1

Plaintiff-appellant appeals from an order of the United States District Court for the Southern District of New York (Torres, *J.*) granting defendants' motion to dismiss a complaint brought pursuant to Fed. R. Civ. P. 60(b) alleging "fraud on the court." The district court held that plaintiff-appellant pled insufficient facts to sustain the claim under the test first articulated in *Martina Theatre Corp. v. Schine Chain Theatres, Inc.*, 278 F.2d 798, 801 (2d Cir. 1960). We agree, and accordingly, we AFFIRM.

---------------

PAUL STUART GROBMAN, ESQ. (Moshe Horn, Christopher M. Van de Kieft, Gitlin Horn and Van De Keift LLP, *on the brief*), New York, NY, *for Plaintiff-Appellant.*

AMY PRITCHARD WILLIAMS (Mackenzie Willow-Johnson, *on the brief*), Troutman Pepper Hamilton Sanders LLP, Charlotte, N.C., *for Defendants-Appellees.*

---------------

BARRINGTON D. PARKER, *Circuit Judge*:

Federal Rule of Civil Procedure 60(b) authorizes relief from a final judgment, order, or proceeding based on, among other things, "fraud on the court." Years after an adverse judgment and unsuccessful appeals in *Mazzei v. The Money Store*, 829 F.3d 260 (2d Cir. 2016) (*"Mazzei I"*), plaintiff-appellant, Joseph Mazzei, sought such relief in district court. He did so after a deposition in a

separate, unrelated lawsuit cast doubt on the truthfulness of certain representations that defendants' counsel made to the court in *Mazzei I*. Defendants moved under Rule 12(b)(6) to dismiss the fraud on the court claim, which the United States District Court for the Southern District of New York (Torres, *J.*) granted. Mazzei then moved for reconsideration, which was denied. Mazzei now appeals these orders.

We hold that the district court correctly concluded that Mazzei failed plausibly to plead a fraud on the court claim. The district court correctly reasoned that the conduct of which he complained had not impaired the court's ability to fully and fairly adjudicate his case because the fraud alleged could have been redressed in *Mazzei I*. Accordingly, the judgment of the district court is affirmed.

**BACKGROUND**

In 2001, Mazzei filed the complaint in *Mazzei I*. On behalf of himself and a purported class, Mazzei claimed that the plaintiffs, who had defaulted on home loans extended by The Money Store,[1] were charged attorneys' fees that were improperly split with a non-lawyer entity, Fidelity National Foreclosure Solutions.

---

[1] In 1999, The Money Store became HomEq Servicing Inc. In 2006, HomEq sold off its loan servicing operation.

This occurred because the Money Store agreed to outsource to Fidelity the necessary legal services for foreclosure, bankruptcy, and other services relating to The Money Store's loan servicing business. Fidelity then referred The Money Store's legal work to various law firms, and provided oversight, monitoring, and other administrative services for those law firms. Mazzei claimed that the fee splitting between Fidelity and these law firms violated the terms of the defaulting borrowers' note agreements.

In 2009, during discovery, Mazzei sought records of fee-splitting payments on defendants' computer systems ("Fee Payment Data"). In response to Mazzei's concerns that such information was at risk of being purged, defendants assured the district court that they had placed a litigation hold to preserve the data. But in 2013, as the case approached trial, defendants revealed that they had not, in fact, preserved the data after selling their mortgage servicing operation in 2006.

Mazzei then subpoenaed HomEq's and Fidelity's successors for the Fee Payment Data. Only one of Fidelity's successors, Lender Processing Services ("LPS"), responded. It claimed that although it possessed Fee Payment Data on its New Invoice System ("NIS"), the information was inaccessible and that it would cost tens of millions of dollars to retrieve it in a readable format.

In October 2013, Mazzei moved to compel defendants to determine whether the data could be retrieved from LPS. Defendants argued in opposition that the NIS had not been housed on HomEq's system and that the NIS data could not be downloaded to HomEq's systems. Defendants also contended that it was not technically feasible for HomEq to have exported the data from the NIS to its systems and that defendants were "unaware of *any* information on 'fee splitting'" and "have no reason to believe that any such information *ever* existed" on the NIS. App'x at 25-26. Defendants claim that they relied on LPS's representations to its lawyers in making these statements.

In July 2014, Magistrate Judge Ronald L. Ellis granted Mazzei's motion, finding that defendants had been grossly negligent and willful in failing to preserve the information. *See Mazzei I*, No. 01 Civ. 5694 (JGK) (RLE), 2014 WL 3610894, at *6-8 (S.D.N.Y. July 21, 2014). As a sanction, Judge Ellis ordered defendants to obtain the information from LPS and required that they bear the costs of determining whether the information was searchable. *Id*. at *8.

Both HomEq and Mazzei challenged Judge Ellis's ruling. Defendants filed objections, in which they represented that they never had access to information on fee splitting because Fidelity did not give The Money Store access to the

5

information on Fidelity's fee arrangements with the law firms it retained. Defendants also contended that they had no practical ability to obtain the fee splitting information at Fidelity or LPS; and that there was no information on the NIS system about fee splitting. As to the last representation, defendants submitted an affidavit from an LPS executive, who stated that NIS did not contain Fee Payment Data, and that defendants did not have access to the servers on which such data was held.

Mazzei responded to the ruling by moving for more punitive sanctions, seeking a default judgment on liability or an adverse inference based on defendants' failure to preserve the Fee Payment Data.

In November 2014, during the final pretrial conference, the district court affirmed Judge Ellis's sanctions ruling and denied Mazzei's motion for additional sanctions. In affirming, the district court observed that Mazzei had not sought more punitive sanctions before the Magistrate Judge, that there was no evidence of HomeEq's bad faith, and that there had been "other, much more relevant evidence [available] had the plaintiff pursued it in a timely and diligent fashion." *See Mazzei I*, No. 01 Civ. 5694 (JGK) (RLE), Dkt. 436 at 64 (S.D.N.Y. Nov. 24, 2014).

In December 2014, *Mazzei I* went to trial, which resulted in a verdict for defendants on the fee splitting claim. Mazzei moved for a new trial under Fed. R. Civ. P. 59, contending that the failure to grant additional sanctions for defendants' failure to maintain the Fee Payment Data warranted a new trial. In opposition to the motion, defendants again claimed that the NIS did not contain Fee Payment Data. The district court denied the motion for a new trial. It found that Mazzei had been unable to prove his individual claim with evidence from the NIS relating to his own fee payments, and therefore there was no basis to believe that Fee Payment Data would have proven any claims asserted on behalf of the class. The district court also observed that the jury could have found that such payments were not in breach of the mortgage note terms. *See Mazzei I*, 308 F.R.D. at 103. In 2016, this Court affirmed. *See Mazzei I*, 829 F.3d at 273.

In March 2014, Mazzei's counsel filed a similar suit against HomEq's successor alleging essentially the same fee splitting claims except that the claims in the new complaint were based on alleged fee splitting that occurred between 2006 and 2010, after Barclays had acquired HomEq. *See Bigsby v. Barclays Cap. Real Est., Inc.*, 391 F. Supp. 3d 336 (S.D.N.Y. 2019) (dismissing case on summary judgment), *aff'd*, 841 F. App'x 331 (2d Cir. 2021).

In 2019, during discovery in *Bigsby*, a representative of Black Knight Financial Services, a successor to Fidelity, was deposed ("2019 Deposition"). That representative acknowledged that she had the "capability today to look up or have someone look up" whether administrative fees were paid for a specific borrower, including whether such fees were paid between 2006 and 2010. App'x at 90-91.

Based on this deposition, Mazzei brought an independent Rule 60(b) action, which is the subject of this appeal, alleging that defendants committed fraud on the court by making a series of fraudulent statements during discovery and the sanctions litigation in *Mazzei I*.[2]

Defendants moved under Rule 12(b)(6) to dismiss the claim, which the district court granted. The court concluded that Mazzei had not been sufficiently diligent in pursuing alternate sources of evidence that were available to prove the

---

[2] These allegedly fraudulent statements were, as categorized by the district court: (1) that defendants had placed a litigation hold on the Fee Payment Data in 2009, when in fact they did not; (2) that defendants could not download (and thus retain) the information on NIS, when Mazzei alleges the 2019 Deposition demonstrates they could; (3) that NIS never contained Fee Payment Data, when Mazzei alleges the 2019 Deposition demonstrates it did; and (4) that the information on NIS from Fidelity and LPS was inaccessible and only readable through a prohibitively expensive process, when Mazzei alleges the 2019 Deposition demonstrates it was easily accessible on request from Fidelity.

improper payments to non-lawyers. Because of this failure, the court reasoned, "the judicial machinery" had not been stopped from "its impartial task of adjudging cases." *Mazzei v. The Money Store*, No. 20 Civ. 3702 (AT), 2020 WL 7774492, at *8 (S.D.N.Y. Dec. 30, 2020) ("*Mazzei II*") (internal quotation marks omitted). The district court also found that misstatements regarding a single source of evidence did not "seriously affect the integrity of the normal process of adjudication." *Id.* (internal quotation marks omitted). Mazzei then moved for reconsideration, which the district court denied. On reconsideration, the district court also noted that Mazzei had failed to allege that any misrepresentations to the district court had been made knowingly. *Mazzei II*, 2021 WL 4429631, at *2 (S.D.N.Y. Sept. 27, 2021). A final judgment was entered and, on appeal, Mazzei challenges both orders.

## DISCUSSION

"We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1076 (2d Cir. 2021) (citation omitted). "To survive a motion to dismiss, a complaint must contain

9

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A denial of a motion for reconsideration is reviewed for abuse of discretion. *See RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 316 (2d Cir. 2003).

**I.**

Federal Rule of Civil Procedure 60 authorizes relief from a final judgment, order, or proceeding based on, among other things, "fraud on the court." It provides that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . . This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding . . . or (3) set aside a judgment for fraud on the court.

Fed. R. Civ. P. 60(b), (d).

On appeal, Mazzei argues that the district court erred in concluding that defendants had not committed fraud on the court by making false representations during *Mazzei I*. Mazzei argues that his counsel's lack of diligence in procuring

10

alternate evidence to prove his claims is irrelevant to a fraud on the court analysis. The proper focus of the test, Mazzei argues, is the court's ability to fairly adjudicate the case before it, not the opponent's ability to ferret out and work around false representations made during litigation. Mazzei also contends that the district court incorrectly concluded that knowledge of, rather than reckless disregard for, falsity is the required state of mind.

Defendants, on the other hand, contend that the district court properly dismissed the claim because the misconduct complained of did not undermine the fairness and integrity of the prior proceeding because it was redressable in that litigation. Defendants further contend that the complaint fails to allege plausibly that the misstatements in question were made willfully. We agree with defendants on both issues.

## II.

Our prior cases have not considered in any depth the elements of an independent action for "fraud on the court." In 1960, in *Martina Theatre Corporation v. Schine Chain Theatres, Inc.*, we adopted the following somewhat nebulous definition:

11

> "[F]raud on the court" is limited to "that species of fraud which does or attempts to defile the court itself * * * so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."

278 F.2d 798, 801 (2d Cir. 1960) (Friendly, *J.*) (quoting 7 Moore, Federal Practice ¶ 60.33, at 512).  In several later cases, we have applied this formulation without modification.  *See, e.g.*, *Kupferman v. Consol. Rsch. & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (Friendly, *J.*); *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972) (per curiam); *Senate Realty Corp. v. Comm'r*, 511 F.2d 929, 931 (2d Cir. 1975); *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002).) (per curiam).

In cases applying the *Martina Theatre* standard, we have consistently held that courts are not prevented from impartially and fairly adjudicating a case where the plaintiff had an adequate opportunity to redress the alleged fraud in the prior action.  *See Gleason v. Jandrucko*, 860 F.2d 556, 560 (2d Cir. 1988) (dismissing claim where plaintiff "had ample opportunity in the prior proceeding to uncover the alleged fraud"); *Serzysko*, 461 F.2d at 702 n.2 (observing that "[t]he test suggested . . . seems to be whether there was an opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action"); *State St. Bank*

12

*& Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) ("Where a movant admits that a letter that the other party supposedly concealed was already present in the movant's files, it cannot claim that it was prevented from fully presenting its case." (internal quotation marks omitted)).

This authority establishes that, to sustain an independent action for fraud on the court, a plaintiff must prove, by clear and convincing evidence, that the defendant interfered with the judicial system's ability to adjudicate impartially and that the acts of the defendant must have been of such a nature as to have prevented the plaintiff from fully and fairly presenting a case or defense.

The district court correctly concluded that this case does not meet that test. Assuming the truth of plaintiff's allegations, he was prevented at most from relying upon one source of evidence. But there is no dispute that alternate sources of evidence existed to prove the same point—that defendants or their law firms made improper payments. As the district court observed:

> [T]he plaintiff never deposed any corporate representatives of Fidelity or of Lender Processing Services, the successor entity that controlled the New Invoice System, nor did he ever seek any court orders for other databases mentioned by the defendants in the course of the 2009 sanctions motions. Moreover, the plaintiff never deposed a single lawyer who allegedly

13

split fees with Fidelity, not even the lawyers who worked on Mazzei's account. In sum, there were no discernible efforts to seek evidence of fee splitting from any source other than the New Invoice System . . . .

*Mazzei I*, 308 F.R.D. 92, 102 (S.D.N.Y. 2015). In short, had Mazzei exercised the required diligence in the prior action and explored avenues of proof available to him, either the alleged falsity of defendants' misstatements would have been uncovered, or he would have been able to offer proof at trial from alternate sources. The existence of these alternatives means that Mazzei was not prevented from fully and fairly presenting his case at trial and, consequently, his fraud on the court claim was properly dismissed.

Other circuits share our unwillingness to find fraud on the court where the alleged fraud could have been redressed in the underlying action. *See, e.g.*, *Andela v. U-Haul Int'l, Inc.*, 831 F. App'x 476, 477 (11th Cir. 2020) ("We have held that an independent action should not be used to relitigate issues that were or could have been raised in the original case." (citing *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1552 (11th Cir. 1985))); *Kennedy v. Schneider Elec.*, 893 F.3d 414, 420 (7th Cir. 2018) (finding no fraud on the court where plaintiff "had the opportunity to challenge" the allegedly false evidence in the prior action); *United States v. Est. of Stonehill*, 660

14

F.3d 415, 454 (9th Cir. 2011) (finding no fraud on the court where plaintiffs failed to establish that defendant "prevented them from having a fair trial or hearing in their case").[3]

Finally, the requirement that, in order to prove fraud on the court, a litigant must have been prevented from fully and fairly presenting her case is consistent with the deference owed to the finality of judgments and respect for the adversarial process. Litigants, courts, and the public have a significant stake in assuming that final judgments remain final. Our adversarial process relies on the parties to keep one another in check. It affords them broad discovery and disclosure supervised by judicial officers, reinforced by sanctions as well as other truth-seeking tools. The process also includes the right to appeal. The important interest in finality is not well served when a losing party can, except in the most

---

[3] *See also Buell v. Anderson*, 48 Fed. App'x 491, 498–99 (6th Cir. 2002) (finding no fraud on the court where petitioner failed to raise a known issue at trial); *Roger Edwards, LLC v. Fiddes & Son Ltd.*, 427 F.3d 129, 135 (1st Cir. 2005) (finding no fraud on the court where plaintiff failed to meet "obligation to use discovery to seek out [evidence] before or during the litigation"); *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 675 F.2d 1349, 1357 (4th Cir. 1982) ("Fraud on the court is therefore limited to the more egregious forms of subversion of the legal process already suggested, those that we cannot necessarily expect to be exposed by the normal adversary process."); *Chicago, R.I. & P. Ry. Co. v. Callicotte*, 267 F. 799, 810 (8th Cir. 1920), *cert. denied*, 255 U.S. 570 (1921) (requiring as an "indispensable" element of an independent attack on a judgment for fraud, that a party have been "prevented" from presenting his case).

exceptional and egregious cases, fail to take advantage of these opportunities and revisit a matter that courts and the parties have understood to have ended. *See Kupferman*, 459 F.2d at 1080–81 ("[U]nder our legal system, the method for reaching this goal is a properly conducted adversary proceeding.").

**III.**

We next turn to the district court's determination that plaintiff failed to allege that defendants' counsel made the misrepresentation with the requisite intent. The district court, on reconsideration, found that Mazzei failed to allege "that the attorneys made those [allegedly false] statements *knowingly*." *Mazzei II*, 2021 WL 4429631, at *2 (emphasis in original). Mazzei urges this Court to adopt a more relaxed state of mind requirement of recklessness, consistent with common law and securities fraud.[4]

---

[4] The circuits that have addressed this issue generally require proof of an intentional fraud. *See In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1097 (9th Cir. 2007) (requiring proof of "an intentional . . . misrepresentation"); *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005) (requiring proof of "an intentional fraud"); *United States v. MacDonald*, 161 F.3d 4, 1998 WL 637184, at *3–4 (4th Cir. 1998) (requiring proof of "deliberate" fraud); *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1266–67 (10th Cir. 1995) (requiring showing of "intent to deceive or defraud"). Only the Sixth Circuit has adopted Mazzei's proposed standard of recklessness. *See Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009).

16

Neither formulation is correct. The law of this Circuit requires, as an element of a Rule 60(b) claim, clear and convincing evidence of bad faith. *See Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). Mazzei's complaint fails to meet this standard. The complaint contains no allegations that defendants—at the time—had any reason to know that their statements about the NIS were false, that their reliance on LPS's representations was unreasonable, or that their failure to investigate LPS's representations was anything more than mere negligence. Mazzei's allegations that such statements were eventually revealed to be false, without any allegations as to what defendants knew or should have known during the original litigation, are insufficient to allege bad faith.

**CONCLUSION**

The judgment of the district court is affirmed.