22-1959
*Mazzei v. The Money Store*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of October, two thousand twenty-three.

PRESENT:
> DENNIS JACOBS,
> RICHARD C. WESLEY,
> BETH ROBINSON,
> > *Circuit Judges*.

_____

JOSEPH MAZZEI, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,

> *Plaintiff-Appellant*,

> v.                                    No. 22-1959

THE MONEY STORE, TMS MORTGAGE, INCORPORATED, HOMEQ SERVICING CORPORATION,

*Defendants-Appellees.*

_____

FOR APPELLANT: PAUL STUART GROBMAN, ESQ., New York, New York.

FOR APPELLEE: AMY PRITCHARD WILLIAMS, Mackenzie W.J. Jessup, Anais M. Jaccard, Troutman Pepper Hamilton Sanders LLP, Charlotte, North Carolina.

Appeal from orders of the United States District Court for the Southern District of New York (Koeltl, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders entered on June 9, 2022, and August 5, 2022, are **AFFIRMED**.

In 2022, Plaintiff-Appellant Joseph Mazzei moved for sanctions against The Money Store, TMS Mortgage, and HomEq Servicing Corporation (collectively, "TMS"),[1] alleging that TMS violated court orders and made misrepresentations to the district court in connection with discovery in a lawsuit

---

[1] TMS Mortgage was a subsidiary of The Money Store and engaged in the business of purchasing, selling, and servicing consumer mortgage loans. In 1999, The Money Store became HomEq Servicing. *Mazzei v. The Money Store*, 62 F.4th 88, 90 n.1 (2d Cir. 2023). In 2006, HomEq sold its loan servicing operation to Barclays Capital Real Estate. In this Order, we use "TMS" to refer to actions taken by any of the three defendants in connection with the case.

that concluded in 2016. The district court denied Mazzei's motion for sanctions and his subsequent motion for reconsideration. Mazzei appeals both orders.

We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

In 2001, Mazzei sued mortgage lender TMS on behalf of himself and all others similarly situated, alleging that in the context of Mazzei's default on his mortgage, TMS improperly charged him for attorney's fees that included payments to a non-lawyer entity, third-party legal outsourcer Fidelity National Foreclosure Solutions ("Fidelity").

In 2009, in response to Mazzei's motion to enjoin TMS from destroying data relevant to the fee-splitting payments (the "Fee Payment Data"), TMS's attorney submitted a sworn declaration affirming that TMS put a "litigation hold" on the relevant documents, and that the data was preserved in a computer database and/or hard copies.

In February 2013, Mazzei requested in discovery documents concerning payments received by Fidelity in connection with loans referred by TMS during the class period. In a subsequent discovery conference, TMS revealed that it had

sold its mortgage servicing operation and all related assets to Barclays Capital

Real Estate ("Barclays") in 2006. Consequently, TMS no longer had access to the

"New Invoice System" containing the potentially relevant data. Mazzei

subsequently subpoenaed HomEq's and Fidelity's successors for the Fee

Payment Data. One of Fidelity's successors, Lender Processing Services ("LPS"),

responded, stating that although it possessed data relating to TMS loans, the data

was not readily accessible and would cost a great deal of time and money to

retrieve in a readable format.

On July 21, 2014, on a motion from Mazzei, Magistrate Judge Ellis

sanctioned TMS for its failure to preserve the Fee Payment Data. *Mazzei v. The

Money Store*, 2014 WL 3610894, at *6–8 (S.D.N.Y. July 21, 2014) ("July 2014

Order"). His order stated in pertinent part:

> Mazzei asks the Court to direct Defendants to obtain the information
> from LPS, as a sanction for their failure to preserve the information in
> its original format. For the following reasons, Mazzei's request
> is GRANTED. **Defendants are ordered to 1) bear the cost of
> determining whether the New Invoice System data currently in the
> possession of LPS is searchable; [and] 2) pay Mazzei his attorneys'
> fees for this application**.

*Mazzei*, 2014 WL 3610894, at *1 (emphasis added). On November 24, 2014,

District Judge Koeltl affirmed the July 2014 Order and denied Mazzei's motion

for additional sanctions or an adverse inference at trial.

The case went to trial in December 2014. Although Mazzei was able to

obtain data regarding his own fee payments and introduced those records at

trial, the jury rendered a verdict in TMS's favor. Mazzei moved to set aside the

verdict, arguing that the court's failure to grant additional sanctions warranted a

new trial. The district court denied his motion, and this Court affirmed. *Mazzei*

*v. The Money Store*, 308 F.R.D. 92 (S.D.N.Y. 2015), *aff'd*, 829 F.3d 260 (2d Cir. 2016)

*and* 656 Fed. App'x 558 (2d Cir. 2016).

Meanwhile, in 2014, Lamar Bigsby initiated a class action against Barclays

alleging virtually the same fee splitting claims for a class of individuals who

signed mortgage agreements after the class in *Mazzei*. Mazzei's counsel also

represented Bigsby. During discovery in *Bigsby*, Black Knight, a Fidelity

successor, produced a document listing gross revenues received from firms for

administrative fees from 2006 to 2010. Additionally, in a deposition, Caroline

Bolen, a Vice President at Black Knight, agreed that she had "the capability today

to look up or have someone look up a particular borrower to see all of the line-

item descriptions that appeared on invoices submitted through [Black Knight's invoice management tool]," App'x 243–44, and testified that she got the data about the named plaintiffs in that case from the Black Knight accounting department within a few days of her request.

Based on this information, in January 2022, Mazzei filed the motion for sanctions that gave rise to this appeal.[2]  Invoking Federal Rule of Civil Procedure 37, Mazzei argued the *Bigsby* evidence demonstrated that the Fee Payment Data was not lost or inaccessible, and that TMS's failure to affirmatively seek that data from Fidelity or its successors back in 2013 and 2014 violated the July 2014 Order and a number of discovery orders from 2013 ("the 2013 Orders"). He sought attorney's fees and expenses pursuant to F.R.C.P. 37(b)(2)(C) (requiring a district court, "instead of or in addition to" the orders provided in subsections (b)(2)(A) and (B), to order a party who failed to obey a discovery order to pay reasonable expenses, including attorney's fees, "unless the failure was substantially justified or other circumstances make an award of expenses

_____

[2] In 2020, Mazzei initiated an independent action asserting claims under Federal Rules of Civil Procedure 60(d)(3) and 37 for fraud on the court and failure to obey discovery orders.  The district court dismissed Mazzei's Rule 60(d)(3) claim for failure to state a claim and his Rule 37 claim for lack of subject matter jurisdiction.  *Mazzei v. The Money Store*, 2020 WL 7774492, at *1 (S.D.N.Y. Dec. 30, 2020), *reconsideration denied*, 2021 WL 4429631 (S.D.N.Y. Sept. 27, 2021).  This Court affirmed.  *Mazzei*, 62 F.4th 88.

unjust"), and urged the district court to invoke its inherent authority to sanction TMS for its conduct during discovery.

The district court denied the motion on June 9, 2022, and Mazzei appealed the court's order and its August 5, 2022, denial of his motion to reconsider.

We review the district court's denial of sanctions for abuse of discretion. *Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143 (2d Cir. 2010).

## I.      Rule 37 Sanctions

The district court did not abuse its discretion in declining to award Mazzei additional sanctions based on TMS's violation of the July 2014 Order or the 2013 Orders.

With respect to the former, we agree with the district court that nothing in the July 2014 Order compelled TMS to proactively seek the data in question from LPS; rather, it required TMS to pay Mazzei's costs in trying to determine whether the data was available.  In particular, Magistrate Judge Ellis concluded:

> Defendants are ordered to 1) bear the cost of determining whether the New Invoice System data currently in the possession of LPS is searchable; [and] 2) pay Mazzei his attorneys' fees for this application.

*Mazzei*, 2014 WL 3610894 at *8.

Mazzei's contention that the July 2014 Order also required TMS to obtain the Fee Payment Data from LPS is contradicted by the Order's plain language. Magistrate Judge Ellis found that TMS "had both the legal right and practical ability to obtain the information relating to fees . . . after the initiation of this action" and was thus accountable for its failure to preserve it. *Id.* at *3. His resulting order contained two, and only two, directives. And it is undisputed that TMS complied with both.[3]

We likewise conclude that the district court did not exceed its discretion in declining to impose additional sanctions based on TMS's violation of the 2013 Orders. Invoking the law of the case, the district court reasoned that the July 2014 Order encompassed sanctions for all of TMS's discovery violations relating to the Fee Payment Data, that order was affirmed by the district court both in November 2014 and after trial, and by this Court on appeal. In the district court's view, violation of the 2013 Orders "was put to rest years ago." App'x 332. And the district court concluded that no exceptional circumstance warranted reopening the matter, as Mazzei could have deposed LPS during discovery and covered the same topics as the deposition in *Bigsby*.

---

[3] Mazzei does not identify any distinct provisions in the district court's November 2014 affirmation of the July 2014 Order that imposed any additional obligations on TMS.

8

The district court did not abuse its discretion. The law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same litigation absent cogent and compelling reasons, such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008). It does not rigidly bind a court to its former decisions, but cautions that "litigants [who] once battled for the court's decision . . . should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964).

Regardless of whether Mazzei previously moved for sanctions based on the 2013 Orders, the district court could reasonably conclude that the July 2014 Order reflected the court's response to TMS's failures with respect to preservation and production of the Fee Payment Data.[4] This issue was decided at least four times, once by Judge Ellis, twice by Judge Koeltl, and then finally by this Court. *Mazzei*, 2014 WL 3610894; SPA 35–53; *Mazzei*, 308 F.R.D. 92; *Mazzei*, 656 F. App'x 558. And it was within the district court's broad discretion to

---

[4] To the extent that Mazzei argues on appeal that the court should have awarded sanctions based on TMS's failures to meet its discovery obligations even independent of any court orders, this reasoning applies as well.

9

conclude that the *Bigsby* evidence did not create an exceptional circumstance that would warrant revisiting the matter.

## II.     Sanctions Pursuant to the Court's Inherent Authority

District courts have inherent power to sanction parties and their attorneys "to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). Such sanctions are warranted only where there is clear and convincing evidence of bad faith. *Id.* We review the district court's decision *not* to impose sanctions pursuant to its inherent authority under the same standard of review as a court's imposition of sanctions under its inherent authority—for abuse of discretion. *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012).

The district court declined to impose sanctions pursuant to its inherent authority, concluding that Mazzei had not established bad faith on the part of TMS. The court reasoned that the *Bigsby* evidence was not necessarily inconsistent with TMS's prior representations as to the availability of the Fee Payment Data. TMS did not state the information was irretrievable, but simply represented that getting the data would be complicated. Mazzei did not present evidence shedding light on how the Black Knight accounting team generated its

10

data for the *Bigsby* case. And the court noted that data related to a time period that excluded the *Mazzei* class: 2006–2010. The court ruled that even if it was wrong on those points, it would exercise its discretion and decline to impose sanctions because Mazzei did not diligently pursue discovery from LPS/Black Knight, and the data would not have changed the outcome of the case, given the minimal impact of Mazzei's own data at trial.

Sanctions pursuant to a court's inherent authority are reserved for extreme cases of bad faith or fraud on the court. The district court did not abuse its discretion in concluding this was not such a case. *See Yukos*, 977 F.3d at 235 ("Plaintiffs cite not a single case in their briefs in which a court of appeals reversed a district court declining to impose sanctions pursuant to its inherent authority. . . . We are also unaware of any such case.").

Mazzei's argument that TMS engaged in newly sanctionable conduct beyond the acts addressed in the July 2014 Order requires inferences that the district court was not required to make. Evidence that Black Knight was able to generate data of the sort Mazzei wanted in connection with his lawsuit does not necessarily establish that *TMS* knowingly misrepresented to the court in 2013 or 2014 that it would be difficult to get that data from LPS. And the court did not

err in considering Mazzei's failure to take advantage of the opportunity, pursuant to the July 2014 Order, to explore, at TMS's expense, the costs and complexity of getting the data from LPS.

* * *

We have considered Mazzei's remaining arguments and conclude that they are without merit. For the foregoing reasons, the district court's orders are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court